CASE No. 1073.

## McCAUGHRIN & CO. v. WILLIAMS.

1. A mortgage of land professing to be given to secure a bond for $8000, was, in reality, intended to secure the payment of notes in bank for $3000, made by the mortgagor and endorsed by the mortgagees, and no bond was, in fact, executed until a year afterwards. *Held,* that the mortgage was a valid security for the amount of the notes and interest.
2. The real consideration, in such case, may be shown by parol.
3. A mortgage given by the maker of a promissory note before maturity to his endorsers, to secure the payment of the note, does not secure a *contingent* liability.
4. A note of mortgagor to mortgagee, not secured by the mortgage and no part of the original consideration agreed upon, cannot be included in such mortgage by subsequent agreement between the parties, to the prejudice of junior encumbrancers.
5. Concurrent findings of fact by referee and Circuit judge, affirmed.

Before WALLACE, J., Laurens, May, 1880.

At the hearing of this appeal the Hon. Thomas B. Fraser, judge of the Third Judicial Circuit, sat in the place of the Chief Justice, who had been of counsel in the court below.

It was an action commenced March 23d, 1877, by A. J. Mc-Caughrin & Co. against J. W. Williams and his mortgage and judgment creditors, praying a foreclosure of a mortgage given by Williams to plaintiffs, and that the other defendants be required to present and prove their liens, &c. The only contest in the case arose upon the mortgage debt of L. L. Young and J. W. Chandler, which was disputed by the other creditors.

All the issues of law and fact were referred to J. F. J. Caldwell, Esq., who made his report, which stated the pleadings, the claims presented, &c.; and also the mortgage of Young and Chandler, its recitals and date, the notes to the bank and the endorsements on the bond, all of which are repeated in the opinion of this court. The report then continues:

It will be observed that this bond was signed just one year

after the date of the mortgage. It is not contended that it is a copy of any bond executed at or before the execution of the mortgage. Nor is it asserted, positively, that any bond was executed by Williams to Young and Chandler, or to either of them, at or before the execution of the mortgage. My notes of testimony, which are filed herewith, show the expression of a general belief on the part of Young that a bond of this character was executed on the same day as the mortgage; but he does not undertake to say certainly that there was such a bond, or, if there was, that the one just described is anything else than a substitute for it. And not even Young has undertaken to say that the matters written at the foot of the bond above described were ever embraced in any other bond than this.

Under these circumstances it became necessary for Young and Chandler to prove the consideration moving Williams to the execution of the mortgage. It was, indeed, contended by their counsel, on argument, that the mortgage operated to secure to them the payment of $8000, and that it rested upon Williams or other creditors of his to reduce that sum; but Young and Chandler themselves recognized the necessity of proving the consideration, and undertook so to do at the trial without being required by my order to make such proof. I am, however, free to say that I would not have hesitated to require such proof. Young, Chandler and Williams, and also J. W. Ferguson, Esq., who drew the mortgage, have testified on behalf of Young and Chandler. As my notes accompany this report, I content myself with a brief summary of the testimony of each of these witnesses. Young insists that the mortgage was executed for the avowed purpose of securing himself and Chandler as endorsers on the two bank notes, and also for the purpose of securing the payment of the $2000 note from Williams to himself, above described. Williams does not remember whether he gave a bond at the time the mortgage was executed or not, and says that he gave the mortgage to secure Young and Chandler, as his endorsers, and also to secure all his creditors—among whom he mentions J. N. Martin, specially. He adds, that at the time of executing the mortgage he had given Young a note, but that they " had had a sort of settlement in a general way." He states

on his examination in reply, that he "intended first to secure Young and Chandler as my [his] endorsers, and the former as my [his] creditor." "And then," he adds, "I designed to make other debts secure." I confess that this testimony strikes me as a fine specimen of the palpable obscure. Chandler does not think that any bond was executed at the time the mortgage was given. He says the mortgage was given to secure himself and Young as endorsers, and he *thinks* "it was William's intention to secure Young individually also, on account of the debt he owed him." Col. Ferguson testifies that he drew the mortgage, Williams, Young and Chandler having come to his law office to have it done; that they "desired a mortgage drawn for four thousand dollars;" that he "put the penalty at eight thousand;" that they then "concluded that they did not know how much money it would be needed to secure," so he "put the consideration in the same sum;" that the mortgage was the only paper he ever drew for them; that there was talk about a bond, but it was never drawn; that they spoke of a debt to the Bank of Newberry, but he does not know whether the mortgage was intended to secure it or not; that the parties spoke of money borrowed, or to be borrowed, from the Bank of Newberry; that he was led to believe that the mortgage was given to secure the payment of money which was to be, or had been, borrowed from that bank; that he does not remember to have heard of the intention to secure any other debts; that it was the debt to that bank which they stated the mortgage was intended to secure.

It is very plain, from all this, that the bond exhibited amounts to nothing more than a statement by Williams in regard to the purpose of his mortgage. As between himself and Young and Chandler, it would constitute an important admission; but as regards other and subsequent lien creditors, it signifies nothing. It is not pretended to be a copy of any former bond, and it is not pretended to contain even the substance of any former bond. I, therefore, hold it to be nothing more than a bare memorandum, which should not affect other creditors in the least.

To further relieve the case of unnecessary discussion, I may state that I am satisfied that no bond was executed at or before the date of the mortgage, or at any other time, except this one

which has been exhibited. The mortgage has, therefore, to stand or fall upon its own contents and the parol testimony taken at the trial.

I confess that I have been much troubled by this case. Indeed, of all the causes which have been referred to me since my coming to the bar, no one has exercised me half so much. My own private opinion is, that the mortgage was given for the purpose of securing Young and Chandler as endorsers on the bank notes; for that matter was certainly spoken of as the object of its execution among both the parties to it and the attorney, Colonel Ferguson, who drafted it. Indeed, unless we presume so serious an instrument to have been drawn and executed without any purpose whatever, we can scarcely arrive at any other conclusion. As regards the individual note I feel differently. I do not dispute that Mr. Young expected it to be secured by the mortgage; but there is no proof that Williams so intended. They wanted security drawn for $4000. Now, this could not embrace $3000 payable to the bank, and drawing one per cent. interest per month, and also the $2000 note, with more than a year's interest, at twelve per cent. per annum, already accrued upon it. I, therefore, unhesitating decide against the claim made for this individual note to the benefits of the mortgage. And this decision is based, not so much upon legal grounds as upon the evidence before me.

But to recur to the two bank notes, against which it is claimed the mortgage was intended as an indemnity. There it was not intended that there should be such certainty of description as in the case of the individual note, as it is called. The bank held the notes, and it might have been difficult, perhaps impracticable, to obtain copies of them. Besides, it is quite likely that renewals were contemplated, which would, of course, vary dates and amounts. And, certainly, a bond of indemnity would have been eminently proper, and this bond might well have been the sole evidence of indebtedness recited in the mortgage. If there had been such a bond executed contemporaneously with the mortgage, or before it, its proper setting forth in the mortgage would have furnished the means of ascertaining the objects of the

mortgage, and it would, therefore, have been sufficiently certain for the purposes of the claim.

But one's private opinion should never be allowed to upset legal rules or contravene established legal principles. And it is upon the strength of such rules and principles that this matter must be determined.

Judge Wardlaw has well spoken, in *Mitchell* v. *Bogan*, 11 *Rich.* 686 of mortgages of real estate as anomalies in the laws of this state. In England they are conveyances, subject to defeasance. Here chattel mortgages operate to transfer the title of the mortgaged property. But, as he says, a mortgage of real estate, with us, is not a conveyance of property, for the mortgagor remains completely the owner of the land.; but it is rather a lien conferred upon the property, under which the mortgagee acquires the right to have the property sold for the satisfaction of the debt intended to be secured, or for the providing for compensation for the breaking of covenants, as the case may be. A mortgage of real estate should therefore be defined to be, not a conveyance of real property from the mortgagor to the mortgagee, with a mere equity of redemption or right left in the mortgagor to recover title to the land upon paying the debt or performing the duty acknowledged in the mortgage, but it should be defined as a mere right given by the mortgagor to the mortgagee, by an instrument in due form, to make the land pay the debt or compensate for the failure to perform the covenants recited in the mortgage. Hence it comes that the mortgage is not the principal thing, but the debt of money or other obligation intended to be secured is the principal thing, and the mortgage only its incident. Hence, also, it is held throughout the United States that where a note or bond is secured by a mortgage of land, the transfer of the note or bond carries with it, whether expressly so stipulated or not, the mortgage, whereas the transfer of the mortgage does not carry with it a transferal of the note or bond. Hence, also, the release of the mortgage by the mortgagee, after his transfer of the note or bond, whether the mortgagor or others have notice of the transfer of the note or not, will not operate as a release. *Muller* v. *Wadlington*, 5 *S. C.* 342.

It is true, that there need not be a separate statement of the debt to be secured expressed in any other writing than the mortgage itself; and in this case the mortgage will occupy the place both of evidence of the debt and the lien which is intended to be given it on the land. But it seems to follow, from the principles just announced, that where the mortgage does not undertake within itself to specify and reasonably ascertain the debt, that debt must be fixed elsewhere, because the mortgage is executed for the sole purpose of securing the debt, and, therefore, when there is nothing fixing the debt, the mortgage is a nullity. I do not mean to say that every inaccuracy or uncertainty in regard to the debt will invalidate the mortgage, for anything is certain in law which may be made certain. And parol evidence would be freely admitted in any court to establish the identity of the real note with that attempted to be described in the mortgage—*ut res magis valeat quam pereat*. But I apprehend that no mortgage would be held valid to secure the payment of a bond when the obligation intended to be secured is described in it as a promissory note or as an open account, or *vice versa*. It has been held in this state that a mortgage may be valid, although the note which it professes to have been executed to secure is shown to be invalid; as in *Gillett* v. *Powell, Spears Eq.* 142, where the note was adjudged nugatory, on account of material alterations, yet the debt held to be enforceable under the mortgage. This decision followed from the holding by the court that the note was no obligation, and, therefore, the mortgage itself expressed the debt. And it is probable that the court was influenced by the fact that it was a chattel mortgage which was sought to be enforced. It has frequently been held that a mortgage conditioned for the payment of future loans or advances, or for the indemnification of sureties or endorsers of contemplated obligations, is valid, without any specifications of the amount or dates of such loans, advances or written obligations in the mortgage, whether there be a bond executed to cover such future indebtedness or not ; but whether a mortgage professing to be executed to secure a certain note or bond, and for that purpose alone, is valid without such a bond or note ever being executed, is quite another question. If the bond in such a case is conceded to be the

principal and substantial thing, and the mortgage only an incident to it, how can it be said that the mortgage has any real legal existence or any available quality about it when there is no note or bond to sustain it? For the mortgage, in such case, does not constitute a debt, but is only a security for a debt. And if there is no debt there can be no mortgage. It is not sufficient to uphold the mortgage that there is some sort of liability from the mortgagor to the mortgagee; the mortgage must be construed according to its own language, and it must be held to apply only to those to which it professes to apply. I am not speaking of mere uncertainty in the language of the mortgage in its description of the debt, but of the debt itself. If the mortgage professes to secure an existing debt which is proved not to exist, it is available for nothing—it is *nudum pactum.* As before stated, I am satisfied that no such bond was ever executed as is described in the mortgage. There is, therefore, no bond secured by the mortgage. There is, therefore, no such debt in existence as this mortgage undertakes to secure. The mortgage is, consequently, a nude pact.

It appears to me useless to say that Young and Chandler had, and have, a contingent claim against Williams, arising out of their endorsement of his notes, in the bank, and that Williams has for six years owed Young a note. Williams gave them no bond; he owes them no bond except that executed a year after the mortgage. He, therefore, did not owe them the debt which the mortgage undertakes to secure as already owing them, so I cannot see that the mortgage secures any debt at all.

[The referee here cited and commented upon the cases of *Parker* v. *Parker*, 17 *Mass.* 370; *Pettibone* v. *Griswold*, 4 *Conn.* 158; *Bramhall* v. *Flood*, 41 *Conn.* 68; *Belknap* v. *Wendell*, 11 *Foster* 92; 2 *Hilliard on Mort.* 369.]

Young, however, although having no valid mortgage on Williams' land, is entitled to a judgment against Williams for thousand     dollars; and as this proceeding is in the nature of a creditor's bill, it might not be improper to allow Young and Chandler a judgment, to be entered at the foot of whatever decree may be pronounced in this cause, for any sum of money they may hereafter pay for Williams on account of the two bank

notes.   But this latter matter I must leave entirely to the discretion of the Circuit judge, as it is without precedent, so far as I know.

I find as matters of fact:   *   *   *

13. That the defendant, L. L. Young, holds a valid sealed note against the said J. W. Williams for the sum of $2000, with annual interest thereon from November 4th, 1873, at twelve per cent. per annum.

14. That the National Bank of Newberry holds a promissory note against the said J. W. Williams, maker, and the said J. W. Chandler and L. L. Young, accommodation endorsers, (which is a renewal of two notes for $1500 each, made by the said maker and endorsers on December 8th, 1874,) on which there is now due the sum of $3522.02.

15. That the said J. W. Williams executed a mortgage of the lands described in the complaint to the said J. W. Chandler and L. L. Young on December 21st, 1874, professing to secure the payment to the said mortgagees of a bond from him to them in the penalty and condition of $8000, which mortgage was duly recorded in the said county of Laurens on January 4th, 1875.

16. That no such bond as is recited in the said mortgage was ever executed.

17. That a bond of such description was executed by the said J. W. Williams on December 21st, 1875.

19. That J. W. Williams is indebted to the said L. L. Young by a sealed note, now amounting to $3695.62.

I find as conclusions of law :

3. That the mortgage from J. W. Williams to L. L. Young and J. W. Chandler is void.

I therefore recommend that the real estate of the said J. W. Williams, described in the complaint, &c., be sold, &c., and that the said L. L. Young have his judgment against the said J. W. Williams for the sum of $3695.62.

This report came before the Circuit Court on exceptions.   The decree is as follows :

This action having been brought to a trial before me at Newberry court-house, by special consent of all the counsel concerned,

on the report of James F. J. Caldwell, Esq., as referee herein, filed on November 17th, 1879, and the exceptions thereto exhibited by the defendants, L. L. Young and J. W. Chandler, jointly, and by L. L. Young as an individual.

The exceptions demand at my hands but a statement by me of their purport. Especially is this the case, as the referee, in his report, is full and explicit.

1. Can a mortgage of land which recites its execution to secure a bond, be held as a valid security against the rights of third persons, if the bond referred to in the mortgage to be secured by it was not executed contemporaneously with or prior to it?

2. If such a mortgage, so executed in the absence of the bond recited in it, should be held valid, can it be made to protect a contingent liability of the grantor of the mortgage to the grantees of the mortgage, arising from their endorsement of his two promissory notes for $3000?

I am satisfied that a mortgage answering to the description named by me in the first proposition of this opinion should be sustained, but the controlling difficulty, to my mind, is embraced in the second proposition, viz., the contingent liability of the grantor, Williams, to the grantees, Chandler and Young, arising from their endorsement of his two promissory notes for $3000.

I am of the opinion that the mortgage in this case, purporting on its face to secure a debt evidenced by a bond, when no such bond was executed until a year after the mortgage, cannot be made available by the mortgagees to secure a contingent liability, not mentioned in the mortgage, of mortgagor to mortgagees.

It is, therefore, ordered, adjudged and decreed that the exceptions be overruled and the report of the referee be confirmed and made the judgment of this court. It is further ordered, adjudged and decreed that the mortgages proved herein be foreclosed, &c.

To which decree the following notice and grounds of appeal were presented :

Please take notice that the defendants, J. W. Williams, L. L. Young and J. W. Chandler, appeal from the decree of Judge Wallace, and will move the Supreme Court, at its next session hereafter, to reverse said decree upon the following grounds :

1. Because the said Circuit judge erred in adjudging that the defendants, L. L. Young and J. W. Chandler, were not entitled to have the mortgage executed by J. W. Williams to them, set up as a subsisting lien upon the lands therein described.

2. Because the said Circuit judge erred in adjudging that the defendant, Young, was not entitled to have the mortgage executed by Williams to Young and Chandler to secure a bond in the penalty and conditions for $8000, set up as a subsisting lien in favor of the said Young, to the extent of the sealed note for $2000, made by Williams to the said Young.

3. Because the said Circuit judge erred in adjudging that the mortgage made by J. W. Williams to L. L. Young and J. W. Chandler was not available to the said Young and Chandler to secure a contingent liability not mentioned in the mortgage of mortgagor to mortgagees; while it is respectfully submitted that his Honor should have held that the mortgage made to secure a bond for $8000 by Williams to Young and Chandler created a lien capable of being enforced for the benefit of the said Young and Chandler, to protect them as the endorsers of the said Williams on his two notes for $3000 to the National Bank of Newberry, South Carolina.

*Messrs. Y. J. Pope* and *B. W. Ball*, for appellants, cited *Herm. on Mort.* 360; 32 *N. Y.* 293; 7 *Cranch* 34; 6 *Watts* 57; 5 *Conn.* 442; 4 *Id.* 158; 7 *Johns. Ch.* 14; 6 *N. Y.* 147; 12 *N. J. Eq.* 13; 57 *Ill.* 327; 24 *Me.* 185; 44 *Id.* 286; 13 *Gray* 168; 1 *Jones on Mort.* 351, 353; 1 *Strob. Eq.* 356; 1 *McM. Eq.* 1.

*Messrs. G. S. Mower* and *C. H. Suber*, contra, cited 10 *Rich. Eq.* 484; 2 *McC. Ch.* 16; 27 *Me.* 400; 15 *Wis.* 601; *Herm. on Mort.* 125.

September 9th, 1881. The opinion of the court was delivered by

Fraser, A. A. J. The case is so fully and clearly stated in the report of the referee, which was confirmed and made the judgment of the Circuit Court, that only so much will be stated here as is necessary to explain the judgment of this court. The

finding of fact by the referee having been concurred in by the Circuit judge, and upon such testimony as has been introduced in this case, will not be overruled in this court.

On December 21st, 1874, J. Wash. Williams, one of the defendants, executed in the usual form a mortgage to J. W. Chandler and L. L. Young, of a tract of land. The mortgage recites that "whereas I, the said J. Wash. Williams, &c., in and by certain bond or obligation, bearing date December 8th, 1874, stand firmly held and bound unto L. L. Young and J. W. Chandler in the penal sum of $8000, as in and by the said bond and condition thereof, reference being thereunto had, will more fully appear."

The condition is for the "payment" of the said debt or sum of money aforesaid, "with interest." The referee finds, as a fact, that no such bond as here described had been executed at or before the execution of the mortgage.

A bond was, however, executed December 21st, 1875, one year after the mortgage, by Williams to Young and Chandler, in the penal sum of $8000, conditioned to pay $8000. This bond is without a witness and has no time fixed for the payment.

On this bond is a written declaration of the same date as the bond signed by Williams; that it was "executed in the place of the bond mentioned in the mortgage, * * it being for the same amount and for the same purposes, and intended to occupy its place under the mortgage, not in payment thereof but in lieu thereof." On the other side of the sheet is a further declaration, in writing, signed by Williams, without date, that this bond and mortgage were given by him "to secure the payment and thereby to save harmless the said Young and Chandler as endorsers thereon of two notes for $1500 each," &c., * * * and "to secure the payment of such renewals thereof as may be made," &c., and "to secure the payment of ———— to L. L. Young," with interest, "the amount of *individual* indebtedness" to said Young. The notes bore date December 8th, 1874. The referee finds, as a fact, that the mortgage was intended, or, to use the words of the referee, "given for the purpose of securing Young and Chandler as endorsers on the bank notes." The referee finds

that there was no *proof* that Williams intended to secure the in-dividual note of $2000 to Young.

His conclusion, therefore, may be stated to be this: that the mortgage was given at its execution to secure the endorsers on the bank notes, but the feature in the transaction, in reference to the individual note of Young, was an attempt to engraft it upon a mortgage with which it had no original connection.

The questions raised by the appeal in this case are—

1. Is a mortgage of land a valid security, which recites a bond to be secured by it, which bond in fact was not executed before the mortgage or at the same time with it?

2. Can such a mortgage be held a valid security for the con-tingent liability of the mortgagor to the mortgagees, arising from an endorsement by the mortgagees on promissory notes of the mortgagor?

3. Can a mortgage, which is a valid security only for contin-gent liability, or for any other debt, be extended afterwards to secure other debts not included in the original agreement be-tween the parties, and after its execution and delivery?

The first question has been decided by the Circuit judge affirmatively, and, we hold, correctly. The case of *Bramhall* v. *Flood*, 41 *Conn.* 58, was a case in which the debt was described as a note for $1000. No such note had been given, but the mortgagor was indebted to the mortgagee for $756 for goods sold, and there was an agreement to furnish the balance to the amount of $1000. The mortgage was held to be void. This is said in *Jones on Mort.*, § 70, to be "an extreme case and not to be re-lied on."

In *Jones on Mort.*, § 353, we find the doctrine laid down in these words: "A deed of trust or mortgage is valid without any note or bond, although it purports to secure a note or bond and substantially describes it. The mortgage debt exists inde-pendently of the note. The inquiry is: Does the debt exist? If it does, it is not essential that there should be any evidence of it beyond what is furnished by the recital of the deed. The validity of a mortgage does not depend upon the description of the debt contained in the deed, nor upon the form of the indebt-edness, whether it be by note or bond or otherwise; it depends

rather upon the existence of the debt it is given to secure. Although there be no note or bond, and no time is specified for the payment of the mortgaged debt, the mortgage, if given to secure the payment of the debt that actually exists, is valid, and may be enforced immediately."

As soon as this mortgage was executed it enured to the benefit of the bank to secure an existing debt, the notes endorsed by Young and Chandler. The renewals of the original notes do not affect the security. *Jones on Mort.*, § 355. If the mortgage was valid to secure the debt which really existed, and that debt was a note or notes payable in bank, it is not correct to say that this was a mortgage to secure a *contingent liability*. If the agreement between these parties had been that the mortgage should secure a note thereafter to be made and endorsed, or an account for goods thereafter to be contracted, it might very well be held that as no such debt existed at the time the mortgage was executed, no such future and uncertain liability could be secured by it; but such is not the case here. The mortgage describes an obligation absolute on the face of it, and parties are estopped from denying its existence. A deed, absolute on its face and reciting full consideration, can be shown by parol evidence to be only a mortgage, and there seems to be no good reason why a mortgage reciting a bond, which in reality has no more existence than the recited considerations of a deed, can be shown to be in reality security for the payment of a debt for which the mortgagor and mortgagees are liable at the time of its execution.

The only question which remains is as to the individual note to L. L. Young. The referee holds that it was no part of the original agreement that this mortgage should secure this note. " A mortgage given to secure a certain debt is valid for that purpose only." *Jones on Mort.*, § 357. The security remains good so long as the debt can be traced, but it cannot cover a new debt by any subsequent agreement of the parties.

It is, therefore, the judgment of this court that the mortgage of J. Wash. Williams is a valid security for the two notes in bank, endorsed by L. L. Young and J. W. Chandler, with their renewals and interest, but that it is not a security for the note of J. Wash. Williams to L. L. Young, individually, for $2000.

It is, therefore, ordered and adjudged that the judgment of the Circuit Court, as herein modified, be affirmed.

McIVER and McGOWAN, A. J.'s, concurred.